# In the United States Court of Federal Claims

No. 12-785C
(E-Filed: August 17, 2015)

_____
                                          )
RICHARD P. WATSON,                        )
                                          )
                    Plaintiff,            )
                                          )
v.                                        )
                                          )
THE UNITED STATES OF AMERICA,             )
                                          )
                    Defendant.            )
_____ )

## ORDER

Currently pending before the court is defendant's motion for a voluntary remand to an Army Medical Evaluation Board (MEB), filed May 26, 2015.  Def.'s Mot., ECF No. 52.  In an order dated July 10, 2015, the court advised that it was inclined to grant defendant's motion.  July 10, 2015 Order at 3, 5, ECF No. 62.  The court further advised that it might reconsider the strict guidelines it imposed upon the Army in an earlier remand order, dated August 13, 2014.  See id. at 3; cf. Watson v. United States (Watson II or August 2014 remand order), 118 Fed. Cl. 266, 272–73 (2014) (limiting the MEB's review "to clinical, health, and other records that existed on or before November 22, 2006" with respect to Mr. Watson's optic atrophy diagnosis and "to clinical, health, and other records that existed on or before February 5, 2007" with respect to Mr. Watson's optic neuritis diagnosis).

During a telephonic status conference held on July 21, 2015, counsel for both parties agreed that this matter should be remanded to an MEB for a third time to determine whether Mr. Watson met medical retention standards during the relevant time period.[1]  See July 21, 2015 Order, ECF No. 64.  The parties further agreed to file a Joint Status Report (JSR) that addressed:  (1) the appropriate retention standard that the MEB should apply on remand; and (2) the time periods (and corresponding records) to which

_____

[1]      The telephonic status conference (TSC) held on July 21, 2015 was recorded by the court's electronic digital recording (EDR) system.  ECF No. 65.  The times noted in this Order refer to the EDR record of the TSC.

the MEB's review should be limited.  Id.  The court urged the parties to reach an agreement as to these two matters.  Id.

The parties filed the JSR on August 11, 2015.  JSR, ECF No. 68.  As to the first matter, "[t]he parties agree that the appropriate retention standard to be applied on remand is Army Regulation 40-501, Chapter 3, which was in effect during Mr. Watson's term of service."  JSR at 4; cf. Watson v. United States (Watson I), 113 Fed. Cl. 615, 621 n.7 (2013) (applying the version of Army Regulation 40-501 effective February 1, 2005, but observing that, "except for differences in capitalization of certain words," the relevant provisions of that version of Army Regulation 40-501 was identical to the version effective December 14, 2007).

As to the second matter, however, the parties disagree.  In defendant's view, the MEB's "review should include all medical records related to Mr. Watson's optic nerve atrophy and optic neuritis diagnoses, including his response to treatment, during his active service."  JSR at 3 (emphasis added).  Plaintiff counters that the MEB's review "should be limited to the medical records in existence on November 22, 2006, with respect to [Mr. Watson's] optic nerve atrophy diagnosis, and February 5, 2007, with respect to his optic neuritis diagnosis," id. at 1, as the court had previously instructed in its August 2014 remand order, see Watson II, 118 Fed. Cl. at 272–73.  Plaintiff argues in the alternative that "if the [c]ourt chooses to modify [its August 2014] remand order to permit the [MEB] to consider records past February 5, 2007," the MEB's review on remand should include medical records that post-date his discharge—namely, his Veterans Administration (VA) medical records.  JSR at 2.

At this time, the court is persuaded that the MEB should be permitted to consider records that post-date February 5, 2007.  As noted in its July 10, 2015 order, "[t]he Army Regulations provide that an MEB narrative summary should include a statement 'regarding the prognosis for functional status,' and that '[t]he stability of the current clinical condition and functional status should be addressed.'"  July 10, 2015 Order at 3 (second alteration in original) (citing Army Reg. 40–400 ¶ 7-24d(3)–(5) (effective Oct. 13, 2006)).  Thus, on remand, the MEB may consider medical and other records that bear on the prognosis of Mr. Watson's diagnoses of optic neuritis and atrophy of the optic nerve—to include records that post-date February 5, 2007.  Whether those records should be limited to those in existence on or before July 11, 2008—the date of Mr. Watson's discharge from active duty service—or some later date is the subject of the parties' disagreement.  Cf. Watson I, 113 Fed. Cl. at 625 (observing that "Mr. Watson was discharged on July 11, 2008").

As support for its position that the MEB's review should not include Mr. Watson's VA records (or any other records that post-date Mr. Watson's July 11, 2008 discharge), defendant contends that such "records would not, and could not have been considered by the MEB in determining whether Mr. Watson met retentions standards for active duty,

which is the focus of the MEB's inquiry on remand."  JSR at 3 (citing Army Reg. 40-400, Ch. 7).

As support for plaintiff's position that the MEB's review "be extended to include his evaluation and diagnosis by the [VA]," plaintiff points to Stuart v. United States, 108 Fed. Cl. 458 (2013), which provides, in relevant part:

> The petitioner may prevail if he can show that if the complete facts concerning his condition had been known at that time he would have been entitled to retirement by reason of physical disqualification under the pertinent laws and regulations . . . .  To this end, reference must of necessity be made to his subsequent medical history insofar as it sheds light on the nature of his physical condition while in service.  Evidence of progressive deterioration and later discovered symptoms and disabilities may be decisive if it can establish that plaintiff's incapacity while in service was substantially more serious than suspected and that previous diagnoses were inadequate or incorrect.

108 Fed. Cl. at 472 (alteration in original) (quoting Walters v. United States, 358 F.2d 957, 962–63 (Ct. Cl. 1966)); see Cole v. United States, 32 Fed. Cl. 797, 804 (1995) (observing that a service member's "condition after he left the military might be relevant evidence of his condition at the time of his discharge"); cf. Jordan v. United States, 205 Ct. Cl. 65, 81 (1974) (observing that "a Correction Board considering a man's application for correction of his records to show him disabled and entitled to disability retirement at the time of his discharge, may properly consider evidence of his medical history following his separation, as such evidence may be highly pertinent to the Board's inquiry").

The court considers both parties' positions reasonable.  The court also wishes to afford the Army the latitude to conduct its affairs in the manner to which it is entitled.  See Skinner v. United States, 594 F.2d 824, 830 (Ct. Cl. 1979).  The court therefore remands this matter to the Secretary of the Army for a determination as to the time periods to which the MEB's review should be limited.  Cf. 28 U.S.C. § 1491(a)(2) ("[T]he court shall have the power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just.").

Thus, consistent with the Army Regulations on remand, the Secretary of the Army shall direct the MEB to evaluate whether Mr. Watson's optic atrophy and optic neuritis diagnoses met medical retention standards during the relevant time period.[2]  The

---

[2]      In Watson I, the court stated that if, on remand, "an MEB determines that Mr. Watson did not meet medical retention standards in the fall of 2006 or early 2007, the MEB shall refer Mr. Watson to a PEB, which is solely responsible for determining whether Mr. Watson was fit for duty."  Watson v. United States, 113 Fed. Cl. 615, 639

Secretary of the Army shall direct the MEB to apply the retention standard set forth in Army Regulation 40-501, Chapter 3 (effective February 1, 2005).  The Secretary of the Army shall also determine whether the MEB should limit its review to clinical, health, and other records that existed on or before Mr. Watson's discharge from active duty service, or, in the alternative, whether the MEB review can be extended to include Mr. Watson's post-discharge VA records.

The court further observes that during the July 21, 2015 telephonic status conference, counsel for the parties agreed that this case would benefit from a "fresh set of eyes." 15:06:40–59 (Chief Judge); see 14:58:7–17 (Def.'s Counsel) (stating that Mr. Watson "is really going to get . . . justice if this is referred to another set of eyes"); 14:59:03–18 (Def.'s Counsel) (referring to plaintiff's "suggestion that [the case] go to a new MEB," and stating that "at a minimum . . . there be a new set of eyes"); 14:59:44–50 (Pl.'s Counsel) (stating that he has had "a lingering concern that the deck was stacked against Mr. Watson at the Fort Gordon MEB"); cf. Watson II, 118 Fed. Cl. at 272 (denying plaintiff's earlier request to have "his case . . . considered anew by an MEB at a different Army installation" (internal quotation marks omitted)).  Accordingly, the Secretary of the Army shall refer this matter to an MEB not located at the Fort Gordon, GA Army installation.

If plaintiff is dissatisfied with any of the processes or procedures on remand, plaintiff is directed exhaust all administrative remedies prior to seeking review in this

---

(2013).  Although the court definitively determined that Mr. Watson should have been referred to an MEB when he was diagnosed with optic neuritis and atrophy of the optic both diagnoses in the fall of 2006 or early 2007, id. at 636–38; accord Watson v. United States, 118 Fed. Cl. 266, 270 (2014) (clarifying that "[t]he court identified the fall of 2006 as a parameter" because Mr. Watson was diagnosed "with optic atrophy four times in the fall of 2006" and further clarifying that "[t]he court identified early 2007 as a parameter because the last date on which Mr. Watson was diagnosed with optic neuritis was February 2, 2007"), the court did not, and does not, intend to impose artificial time constraints on the MEB.

Further to the court's instructions that the parties be prepared to address "the time frame by which a medical retention standard determination is normally made after a Soldier has been referred to an MEB," July 10, 2015 Order at 4, ECF No. 62, counsel for defendant represented that there was no standard time frame for application of the medical retention standard after a solider has been referred to an MEB—rather, such determinations are "done on a case-by-case basis." 14:55:25-54 (Def.'s Counsel); cf. Army Reg. 40-400 ¶ 7-1 (effective Oct. 13, 2006) ("MEBs must be completed expeditiously.").  Thus, the court defers to the Army's determination as to the relevant time period within which the MEB should examine whether Mr. Watson's optic atrophy and optic neuritis diagnoses met medical retention standards.

court.  The court advises plaintiff's counsel that it will defer to the Army decisions regarding medical retention standards (and, ultimately, fitness for duty determinations). See Orloff v. Willoughby, 345 U.S. 83, 94 (1953) ("Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters."); Heisig v. United States, 719 F.2d 1153, 1156 (Fed. Cir. 1983)("[R]esponsibility for determining who is fit or unfit to service in the armed services is not a judicial province . . . ."); Fuentes v. United States, 107 Fed. Cl. 348, 356–57 (2012) ("[T]o the extent Plaintiff substantively challenges the Army's finding that Plaintiff satisfied retention standards, the Court finds that that is a nonjusticiable matter that is best left to the Army.").

Further to the foregoing, defendant's motion for voluntary remand is **GRANTED**, the court's August 2014 remand order is **MODIFIED**, and the decisions of the Fort Gordon MEB are **VACATED**.  This case is **REMANDED** for six months to the Secretary of the Army for further proceedings consistent with the specific directions provided.  The parties shall file joint status reports every ninety days informing the court of the status of the remand.  See RCFC 52.2(b)(1)(D).

Should the parties have any questions regarding the content of this order, counsel may contact chambers at 202-357-6357.

IT IS SO ORDERED.

s/ Patricia E. Campbell-Smith
PATRICIA E. CAMPBELL-SMITH
Chief Judge